UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CEDRIC J. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 14-4009-MMM |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter came before the Court for a bench trial on March 5, 2018, on Plaintiff's Federal Tort Claims Act 28 U.S.C. § 2671, *et seq.* ("FTCA") claim against the Defendant United States of America. Plaintiff alleged that he was injured due to Defendant's negligent maintenance of a stool in the Federal Courthouse in Rock Island, Illinois.

On August 15, 2017, the Seventh Circuit Court of Appeals remanded the matter on a single issue, finding that Plaintiff's *res ipsa loquitur* claim that he would not have been injured absent Defendant's negligence, survived summary judgment. Plaintiff was ably represented by Counsel Marc Kadish and Jed Glickstein of Mayer, Brown, LLP; and the Defendant United States was ably represented by Assistant United Sates Attorneys Kimberly Klein and Joshua Grant. The Court had previously granted the parties' request to bifurcate the proceedings into two trials, one on the issue of liability and the other on the issues of causation and damages. The bench trial of March 5, 2018 considered only the liability issues.

The Court heard evidence by the parties and at the conclusion found in favor of the Defendant United States. The Court made the finding that Plaintiff had not provided credible testimony that he would not have been injured absent Defendant's negligence. The Court

1

explained that its rulings would not be final until a written order was entered. This Order is intended to provide the Court's Finding of Facts and Conclusions of Law as required under Rule 52(a) of the Federal Rules of Civil Procedure.

## MATERIAL FACTS

On January 18, 2013, Plaintiff was a 61 year-old pretrial detainee in the custody of the Rock Island County Jail ("Jail") in Rock Island, Illinois. The facts are undisputed that Plaintiff was taken to the Rock Island Federal Courthouse for arraignment. After the arraignment, he was placed in a locked conference room with his criminal defense attorney, George Tassef. Plaintiff and Attorney Tassef sat on opposite sides of a mesh screen which divided the room. On Plaintiff's side was a seat on a raised pedestal which was attached to the wall. The seat had no back and could be swung away from the wall. Plaintiff sat on the seat and claimed that it "wobbled," causing him to fall backwards onto the floor.

Plaintiff was returned to the Jail soon after that and then later taken to the hospital. Deputy U.S. Marshal Shepard testified that he was told that Plaintiff was hospitalized with "stroke-like symptoms." Plaintiff testified that he suffered a stroke. There was no additional testimony as to the injuries as these matters had been reserved for a separate trial on the causation and damages issues.

## STANDARD OF REVIEW

Plaintiff had filed his case under the FTCA with provides no right to a jury trial. This Order is entered pursuant to Fed.R. Civ. P. 52(a)(1) which governs non-jury matters and provides that "[t]he findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed.R. Civ. P. 52(a)(1).

**TESTIMONY**

The Court commenced the proceedings on the record and the Court, parties and counsel, assembled in the Rock Island Federal Courthouse interview room where the incident occurred. There are two interview rooms located in a secured area in the Office of the United States Marshal. The rooms are similar in size and appointment. There was not dispute but that Plaintiff fell while in Interview Room A. Interview Room A, then and now, has a swing arm stool which attaches to the side wall. The seat itself was small, round, backless and appeared to be made of aluminum. A steel post ran vertically under the seat into a horizontal steel pipe, forming a right angle. The right angle pipe was attached to the wall by a steel bracket. The bracket was fixed by bolts or screws which were flush-mounted with the bracket.

The Court examined the underside of the seat which had a square metal plate welded to the seat bottom. On top of that was a slightly smaller metal plate which had four open holes as would accommodate large-size bolts. There were no bolts in the holes under the seat. The smaller metal plate was welded to the larger at one end, and welded to the vertical steel pipe at the other. The Court noted that when force was applied to the top of the seat, it moved somewhat in an upward/downward direction. The seat did not move side-to-side and was not seen to wobble.

The Court also viewed Interview Room B. The stool in that room had a seat which was small, round, backless and appeared to be made of aluminum and appeared identical to that in Room A. The seat, however, did not have a swing arm mechanism, but was fixed to a horizontal metal pipe coming up from the floor.

Testimony of Plaintiff Cedric Smith

Plaintiff was called as the first witness in Plaintiff's case-in-chief. Plaintiff testified

that he was in the courthouse that day for an arraignment. He was appointed counsel and escorted to Room A, a locked interview room, so he might meet with his attorney. Counsel, George Tassef was on the attorney side of the interview room when Plaintiff entered. Plaintiff claims that he sat on the swing arm seat and was immediately thrown to the floor, as in one motion. Plaintiff testified that the front of the seat had raised upwards, causing him to fall backwards, striking his head on the wall.

Plaintiff testified that when he was on the floor he looked under the seat. He noted the smaller metal plate with the four bolt holes. Plaintiff initially testified that two of the bolts were missing, as there were two bolts in the back of the plate and none in the front. Still under direct exam, he testified further and inconsistently, that the smaller metal plate had four bolts but that the two front bolts were missing nuts. Plaintiff testified that there were no nuts on the floor.

Plaintiff reviewed photographs of the underside of the seat in Room A, taken at an unspecified time after the events. Plaintiff testified that the condition depicted in the photographs was substantially different from that on the day in question. Plaintiff testified that the underside of the seat currently showed two corners with weld beads. Plaintiff is a former welder and testified that he would have noticed if the seat had been welded on the day he fell. He also testified that the underside of the seat had subsequently been painted.

Plaintiff testified that he got up from the floor, sat back on the seat, and spoke for an undisclosed time with Attorney Tassef. Plaintiff was later taken to a holding cell and then back to the Jail. He did not tell anyone at the courthouse that he had fallen due to a defect in the swing arm stool though he later filed an administrative complaint claiming the defect.

Plaintiff testified that approximately three months later, he returned to the courthouse

for further proceedings on his criminal case. He was initially placed in Interview Room A where he looked under the seat. He testified that he saw that, in the interim, the plate with the four bolt holes had been welded to the bottom of the seat, but that the underside of the seat was still unpainted. Plaintiff refused to stay in Interview Room A and was moved to Interview Room B.

Plaintiff testified on cross-examination that he had had a prior stroke in 2005 and had a good recovery. When asked whether he had a good recollection of the events, Plaintiff testified that he did, despite his deposition testimony that his memory after the fall was "hazy".

Counsel impeached Plaintiff with his deposition testimony where he had claimed that there were no bolts under the seat; his initial trial testimony that there were two bolts under the seat; and his subsequent trial testimony that there were four bolts and two were missing nuts. When asked to explain the discrepancies, Plaintiff only reiterated that there with four bolts and that the two front bolts were missing nuts. Plaintiff testified that the nuts were unpainted metal approximately 9/16 inches in size. Plaintiff also testified that when he got up from the floor and sat back on the seat, he noticed it was "wobbly". Plaintiff testified that after he was reseated, he and his attorney resumed their conversation.

Plaintiff was asked how he was able to look under the seat when he returned to the interview several months later. Plaintiff admitted that on that date, he was using a walker. He testified that he placing his walker over the stool and was able to balance himself and view the underside of the seat. That is when he noted that it had been repaired since the day of the fall.

<u>Testimony of George Tassef</u>

Plaintiff's former criminal defense attorney, George Taseff, was called as Defendant's first witness. Counsel represented to the Court that Mr. Taseff was testifying pursuant to

subpoena and an agreed limited waiver of attorney/client privilege. Mr. Taseff testified that on the day in question he first saw Plaintiff at the arraignment when he was appointed as Plaintiff's public defender. When Plaintiff joined him at counsel table, Attorney Taseff noted that he was walking with some difficulty. He also testified that Plaintiff appeared to have difficulty understanding the potential penalties to which he was subject and that Plaintiff told him that he could not read.

Mr. Taseff asked to meet with Plaintiff in an interview room in the secured area in the Marshal's Office. He testified that he was in the attorney portion of Interview Room A when Plaintiff was brought in. Plaintiff sat on a stool on the opposite side of a mesh screen and, when he was seated, could be observed only from the mid-torso upwards. Mr. Taseff explained that when he interviews a new client, he first obtains preliminary and biographical information. He estimates that he had spoken with Plaintiff for several minutes and had obtained much of the preliminary information, when the incident occurred. He and Plaintiff were speaking eye-to-eye and Plaintiff was leaning forward when he suddenly reared back. Plaintiff's shoulders and upper torso went up and back, his eyes widened, and he made an "Oh" sound. Attorney Taseff saw Plaintiff fall backward and hit the floor with a thud. He heard Plaintiff say "help me" and ran to get a Deputy Marshal. Attorney Taseff had the impression that Plaintiff had lost his balance, perhaps while adjusting himself on the stool. He did not speak to Plaintiff again that day.

Mr. Tassef testified that he met with Plaintiff on subsequent occasions regarding the criminal matter. Neither he nor Plaintiff discussed the circumstances of the fall. The witness testified that he had met clients in the interview rooms hundreds of times. He had never known a client, or anyone else, to have fallen from the seat in in either of the interview rooms.

6

He never had a client complain that the swing arm stool was dangerous or broken.

Testimony of Deputy Scott Shepherd

Scott Shepherd has been a U.S. Deputy Marshal for 18 years. He was assigned to the Rock Island Federal Courthouse for 10 years, and last year reassigned to Davenport, Iowa. Deputy Shepherd testified that he was at the courthouse in 2004-2006, when the U.S. Marshal's Office and cellblock were remodeled. He testified that there have been no subsequent renovations.

Deputy Shepherd had an independent recollection of Plaintiff, Cedric Smith. The witness recalled that he and another individual, whom he does not remember, escorted Plaintiff from the cellblock to the courtroom, and later to the interview room. Defendant Shepherd explained that they always have two individuals to transport a prisoner in custody. On this date he likely would have worked either with another Deputy Marshal or a contracted security officer.

Deputy Shepherd testified that he had personally taken the photographs of the swing arm stool which had been admitted into evidence. He did not recall the date on which he did this, but believes it was some time after the filing of the lawsuit. Deputy Shepherd testified that the photographs accurately depicted the swing arm stool both in its current condition and as it was on the date of the incident. The witness testified that the seat had never been affixed with bolts and that it had been welded since the date it had been installed. Mr. Shepherd testified that correctional equipment is ordered through a specialty company as it must be heavy duty and may not have protruding hardware such as nuts and bolts. Hardware is flush-mounted and then a grinder is used to round out the corners of the hardware, to prevent removal. The witness testified that if he saw equipment which had removable hardware, he would notify his

supervisor and the Judicial Security Inspector, requesting that it be replaced. He testified that this was not an issue with the swing arm stool in Room A.

The witness testified that the stool in question could move 1 to 2 inches upward and downward, but not back or forth, as it is attached by a spindle and iron pipe which does not allow play. Plaintiff did not examine the stool after the fall and was not aware that Plaintiff's fall was attributed to the stool. He testified, and a documentary exhibit corroborated, that the Deputy Marshals did twice daily cellblock sweeps which include the interview rooms. A cellblock sweep was done the evening before and the morning of the incident and no problems noted. Deputy Shepherd testified that he did not check the underside of the interview room stools on a daily basis, but did so more or less on a weekly basis. When doing so, he would bend from the waist to look under the seat. He did not run his hand under the seat as part of the sweep.

Deputy Shepherd testified that the deputies do not monitor or videotape anything in the interview rooms as prisoners are speaking with their attorneys. He was not sure how he first became aware that Plaintiff needed assistance. Deputy Shepherd testified that when he entered the room, he saw Plaintiff seated on the floor with his feet on the floor and his arms behind him. Plaintiff told him that he had fallen off of the stool and hit his head. Plaintiff did not claim that the stool was broken or defective. Deputy Shepherd helped Plaintiff up and was preparing to call an ambulance when Jail security officers arrived. Deputy Shepherd asked that the officers to take Plaintiff to the nurse immediately upon their return to the Jail. Despite these concerns, Deputy Shepherd did not fill out an incident report, as he did not believe that the fall was related to conditions in the interview room.

On January 18, 2013, Deputy Shepherd sent an email to his supervisor Doug Sparks

and Daryl Hollenback, then the deputy-in-charge. In that email, Defendant Shepherd indicated that Plaintiff had been admitted to the hospital with "signs of a stroke." Notwithstanding this email, on August 7, 2013, Supervisor Sparks sent an email which he copied to Deputies Shepherd and Hollenback, claiming that neither he nor the Deputies knew anything of the incident. Deputy Shepherd testified that Supervisor Spark's claim was incorrect, but does not recall bringing the error to his attention.

      Testimony of Deputy Daryl Hollenback

Daryl Hollenback was the U.S. Deputy Marshal in charge of the Rock Island Federal Court house from 2011 through 2013. He is currently a Deputy U.S. Marshal in Reno, Nevada. Deputy Hollenback testified that he was not in the courthouse on the morning in question and was serving a warrant in Colchester, Illinois. When he returned that afternoon, George Taseff told him that his client had fallen off of a broken bench in the interview room. The witness testified that he went to Interview Room A and examined the stool. It swung out from the wall and appeared undamaged. Deputy Hollenback believed, but was not certain, that he looked under the stool. He did not observe any missing hardware or hardware lying on the floor. He sat down on the stool and noted that it did not tilt or wobble.

Deputy Hollenback testified that he did not fill out an incident report as the equipment was not broken and he was not initially aware that Plaintiff was injured. When questioned by the Court, he stated that the deputies were required to generate a 210 report of any serious incident. While he admitted that he later learned that Plaintiff was admitted to the hospital with stroke-like symptoms, he did not believe this was related to the incident in the interview room, and did not believe an incident report was necessary.

Deputy Hollenback corroborated Defendant Shepherd's testimony that removable nuts

9

and bolts may not be used in a secured area such as the interview rooms. He denied that there had ever been bolts under the seat, testifying that if there had been bolts in the small metal plate, they would have protruded through the top of the seat, making it impossible to sit. He also corroborated Deputy Shepherd's testimony that cellblock sweeps were done twice daily with one done the morning of the fall and another that evening. Deputy Hollenback testified that, while he regularly conducted cellblock sweeps, he could not state that he looked under the interview room seats.

Deputy Hollenback testified that he was aware of Plaintiff's fall on the day it occurred. He did not specifically remember the email from Supervisor Sparks disavowing any knowledge by Sparks, Shepherd or Hollenback. He did not recall contacting Supervisor Sparks regarding the apparent error.

## **FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

Plaintiff pled his negligence claim against the United States under the Illinois doctrine of *res ipsa loquitur. Res ipsa loquitur* is a type of circumstantial evidence that permits a trier of fact to infer negligence when the plaintiff does not know the cause of her injury. *Shadley v. WWS Inns, Inc.,* No. 02-50138, 2002 WL 1611651, *1 (N.D.Ill. July 18, 2002). Whether to apply the doctrine is a question of law to be decided by the Court. *Spidle v. Steward*, 79 Ill. 2d 1, 7 (1980). *Res ipsa loquitur*, "the thing speaks for itself," "applies only when the facts proved by the plaintiff admit of the single inference that the accident would not have happened unless the defendant had been negligent." *Britton v. Univ. of Chi. Hosps.,* 382 Ill.App.3d 1009, *7-8 (Ill.App.Ct. 2008).

Plaintiff must establish that the defendant had exclusive control over that which caused the injury and that the injury is unexplainable absent defendant's negligence. *Spidle,* 79 Ill.2d at

\*1-2. "The use of *res ipsa loquitur,* however, does not relieve the plaintiff of the burden of proving negligence by a preponderance of the evidence." *Imig v. Beck*, 115 Ill. 2d 18, 27–28, 503 N.E.2d 324, 329 (1986).

    Here, the parties did not dispute that Defendant had exclusive control over the seat in the locked interview room in a secured part of the courthouse. Plaintiff, however, has failed to establish the next element, that if Defendant had not been negligent, he would not have fallen. The Court does not find, as a matter of law, that Defendant's negligence is the only possible explanation for the fall. The seat in question is small and has no back. Plaintiff might, in repositioning himself, have merely fallen off. There is the additional possibility that Plaintiff, who had suffered a prior stroke eight years previously, suffered another stroke which caused him to fall off of the stool.

    The Court did not find Plaintiff's testimony as to the allegedly unsafe condition of the stool to be credible. Plaintiff testified at his deposition that there were no bolts under the seat. He testified at trial that there were two bolts and, later during trial, that there were four bolts, only two of which were secured with nuts. Defendant produced credible testimony through Deputies Shepherd and Hollenback that removable nuts and bolts would not have been allowed in the secured area. The Deputies also provided credible testimony that the seat had always been welded to the swing arm and had not been repaired or modified since the date of the accident.

    Plaintiff testified that he fell immediately after sitting on the stool. Attorney Taseff, who appeared to have a clearer memory of the events, testified that the two had spoken for several minutes before Plaintiff fell. The Court finds Mr. Taseff's detailed testimony more credible and, as Plaintiff did not fall immediately, it appear less likely that the stool was defective.

11

Mr. Tassef also testified that he left the interview room to get help and did not speak to Plaintiff again that the day. Plaintiff for his part, testified that he sat back in the stool and resumed the interview. This testimony is contradicted both by Attorney Taseff and Deputy Shepherd who testified that he helped Plaintiff up from the floor and then handed him over to Jail security officers.

Plaintiff's credibility is further undermined by his admission that, on the day in question, he did not tell anyone that he had fallen due to a defect in the stool. Plaintiff, in fact, had subsequent contacts with Mr. Tassef and never claimed that the stool was defective. The Court could find in Plaintiff's favor only if there were evidence that the stool had removable hardware which was not properly affixed, that the Marshal's Service surreptitiously had the seat repaired and painted, and that Deputies Shepherd and Hollenback perjured themselves in open court. The Deputies were undoubtedly remiss in not completing incident reports and not correcting their Supervisor's claim that none had notice of the event. This, however, does not evidence a "cover up" and does not relieve Plaintiff of the burden of proving, as a matter of law, that there is only the single inference that his injury was caused by Defendant's negligence. *Britton,* 382 Ill.App.3d at *7-8. Plaintiff has not proved this and judgment must be granted in favor of the Defendant United States.

## CONCLUSION

Pursuant to its obligation under Rule 52 of the Federal Rules of Civil Procedure, the Court, having considered all the evidence and assigning such weight as the Court believes it is entitled to receive, finds, and the Clerk of the Court is DIRECTED to enter judgment in favor of the Defendant United States of American and against Plaintiff Cedric Smith. This case is closed with the parties to bear their own costs.

ENTERED this  27th  day of    March   , 2018.

                                                  s/Michael M. Mihm
                                           MICHAEL M. MIHM
                                  UNITED STATES DISTRICT JUDGE